# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No. SA CV 21-00703-DOC-DFM                    Date: June 17, 2021

Title: ERIN JONES V. JW MARRIOTT ANAHEIM RESORT

---

PRESENT:

### THE HONORABLE DAVID O. CARTER, JUDGE

| Karlen Dubon | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
|---|---|
| None Present | None Present |

---

**PROCEEDINGS (IN CHAMBERS):    ORDER REMANDING CASE TO STATE COURT [10]**

Before the Court is Plaintiff Erin Jones's ("Plaintiff") Motion to Remand ("Motion") (Dkt. 10). The Court finds this matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; Local Rule 7-15. After reviewing the papers, the Court REMANDS this case to the Superior Court of California, County of Orange.

**I.    Background**

    **A.    Facts**

The following facts are drawn from Plaintiff's First Amended Complaint ("FAC"). FAC 1. This action concerns Marriott International, Inc.'s ("Defendant") alleged violations of the California Labor Code and of the California Business & Professions Code. *See generally* FAC. Plaintiff seeks to certify a class of all current and former hourly-paid or non-exempt employees who worked for Defendant within the State of California at any time during the period from February 8, 2017 to final judgment. *See id.*

Plaintiff filed suit against the Defendant, alleging the following causes of action: unpaid overtime; unpaid meal period premiums; unpaid rest period premiums; unpaid

minimum wages; final wages not timely paid; non-compliant wage statements; unreimbursed business expenses; and violation of the California Business & Professions Code. *See id.* Plaintiff seeks damages that include attorneys' fees, unpaid regular and overtime wages, premium pay for meal and rest period violations, waiting time pay, penalties for non-compliant wage statements, and unreimbursed expenses. *See id.*

### B.    Procedural History

On February 8, 2021, Plaintiff originally filed a class action complaint against the Defendant in the Superior Court of California, County of Orange County. *See generally* FAC 2. Defendant removed the action to this Court on April 15, 2021, asserting original jurisdiction. Notice of Removal (Dkt. 1). On May 13, 2021, Plaintiff filed an Amended Complaint. FAC 1. On May 17, 2021, Plaintiff moved to remand the Defendant's removal of this action from state court. Mot. to Remand (Dkt. 10). On May 28, 2021, Defendant opposed the Plaintiff's motion to remand. Opposition (Dkt. 15). On June 7, 2021, the Plaintiff replied to Defendant's opposition. Reply (Dkt. 16).

## II.   Legal Standard

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Because 28 U.S.C. § 1447(c) contains the word "shall," and not the word "may," the court is powerless to hear the case when it lacks subject matter jurisdiction, and must remand the case to the state court. *See Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund*, 500 U.S. 72, 87 (1991). ("[A] finding that removal was improper deprives that court of subject matter jurisdiction and obliges a remand under the terms of § 1447(c)").

The Class Action Fairness Act ("CAFA") allows defendants to remove to federal court class action lawsuits in which (1) the proposed class has at least 100 members; and (2) the primary defendants are not "[s]tates, [s]tate officials, or other governmental entities against whom the district court may be foreclosed from ordering relief." 28 U.S.C. § 1332(d)(5). A federal district court has original jurisdiction over such class actions if the amount in controversy exceeds $5,000,000, and any plaintiff is diverse with respect to any defendant. § 1332(d)(2), (5); *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021 (9th Cir. 2007).

"In determining the amount in controversy, courts first look to the complaint." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1993, 1997 (9th Cir. 2015) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)). When the complaint

does not allege an amount in controversy, a removing defendant may show that federal jurisdiction is appropriate by pleading a "plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014) (citing 28 U.S.C. § 1446(a)). However, if the plaintiff disputes the allegation, then the parties must submit evidence to prove their calculations of the amount in controversy by a preponderance of evidence. *Id.* at 554; *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 976 (9th Cir. 2013). To meet this burden, the defendant must ground its calculation of the amount in controversy in "real evidence" and "reasonable assumptions," not "mere speculation and conjecture." *Ibarra*, 775 F.3d at 1197, 1199. A court may look beyond the pleadings to "'summary-judgment-type evidence'" to determine the amount in controversy. *Id.* at 1197 (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)).

Under CAFA, "the burden of establishing removal jurisdiction remains . . . on the proponent of federal jurisdiction." *Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir. 2006). To protect the jurisdiction of state courts, removal jurisdiction should normally be strictly construed in favor of remand. *Harris v. Bankers Life and Cas. Co.*, 425 F.3d 689, 698 (9th Cir. 2005) (citing *Shamrock Oil & Gas Corp. v. Sheet*, 313 U.S. 100, 108-09 (1941)). However, "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co., LLC*, 135 S. Ct. at 554; *see also* S. Rep. No. 109-14, p. 43 (2005) (noting CAFA's "provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

## III. Discussion

Plaintiff moves to remand based on the amount in controversy under CAFA. Mot. to Remand 6. Plaintiff asserts that the Defendant has not met its burden because it failed to support its amount in controversy calculations with sufficient evidence. Mot. to Remand at 6. In response, Defendant argues that Plaintiff's motion must be denied, because Plaintiff has not provided alternative calculations and erroneously asserts that Defendant's assumptions are unreasonable and unsupported by evidence. Opp'n. at 1. Since, however, Plaintiff has challenged Defendant's estimate, it is Defendant who bears the burden of proving the amount in controversy to establish jurisdiction. *See Dart Cherokee*, 135 S. Ct. at 553-54 (2014); *Abrego*, 443 F.3d at 685 (9th Cir. 2006). As such, Defendant must provide evidence to support its amount in controversy calculation.

The Court finds that Defendant has not shown by a preponderance of the evidence that the amount in controversy exceeds $5,000,000. Defendant argues that based on a conservative estimate, the amount in controversy ranges from $9,358,711.09 to $17,087,183.59. Notice of Removal ¶ 21. Defendant relies solely on the declarations of its Vice President of Human Resources, Tiffany Schafer, and its counsel, J. Scott Carr, to support its amount in controversy calculations. Opp'n. at 3-4. *Contreras v. J.R. Simplot Co.*, No. 2:17-cv-00585-KJM-EFB, 2017 WL 4457228 (E.D. Cal. Oct. 6, 2017) is instructive here.

In *Contreras*, the district court held that the defendant did not meet its heightened burden of proof to support its amount in controversy calculation of over $5 million. *See id.* at 4. The *Contreras* defendant relied only on the complaint and the averments of a Human Resources Manager as proof. *See id.* at 2. Similarly, here, Defendant relies only on Schafer's and Carr's declarations to claim that the aggregated amount in controversy exceeds $5 million. Notice of Removal ¶¶ 10, 14, 17, 21. Accordingly, the Court finds that Defendant has not met its burden in establishing federal jurisdiction under CAFA.

### A. Waiting Time Claim

Defendant argues that it meets the $5 million amount in controversy threshold based on the waiting time claim alone. Opp'n. at 13. Defendant relies on Carr's declaration, which calculates the amount by "multiplying each employee's daily-pay rate (or the applicable minimum wage rate) by the number of days of separation (up to 30 days) to determine the amount of waiting time penalties for each separated employee" and "adding those penalties together to reach the total amount in controversy" of at least $5,251,863.87. *Id.* at 4. Carr uses a 100% violation rate, which Defendant argues was dictated by the FAC. *Id.* at 13. The Defendant asserts that the Plaintiff's FAC did not include qualifying language, and compared the allegations to those made in *Noriesta v. Konica Minolta Business Solutions U.S.A., Inc.*, 2019 WL 7987117, at *6 (C.D. Cal. June 12, 2019), where the court denied a motion to remand. *Id.* at 13-14. Specifically, Defendant points to Plaintiff's allegation that Defendant had "engaged in a pattern and practice of wage abuse." *Id.* at 14. Based on that language, Defendant argues that the 100% violation rate was appropriate.

In contrast, Plaintiff responds that Defendant's calculations are unreasonable for using a 100% violation rate. Plaintiff contends that a "'pattern and practice' of doing something does not necessarily mean *always* doing something." *Landeros v. Allfast Fastening Sys.*, WL 1134681, at *3 (C.D. Cal. Feb 9, 2021); *see* Reply at 10. Defendant's

assumption that *all* former employees had unpaid wages for at least 30 days is "unrealistic and unreasonable." Reply at 10. Plaintiff argues that such extreme violation rates can be assumed "'only if supported by allegations in the pleadings.'" *Id.* (citing *Brancaccio v. Knauf Insulation, Inc.*, WL 1686253, at *4 (C.D. Cal. Apr. 7, 2020), in which the court held that extreme violation rates are rejected if they are solely based on allegations that the violations were routine). Plaintiff's FAC, however, only alleges a "pattern and practice" of wage abuse, but "does not state that *all* employees suffered these violations." Reply at 11 (emphasis added). Therefore, Defendant has not shown that its assumed extreme 100% violation rate is reasonable or realistic. *Id.*

The Court agrees with Plaintiff that Defendant's use of 100% violation rate is inappropriate here. Defendant assumes that *all* employees suffered under this wage time claim. Defendant makes this assumption based on Plaintiff's "pattern and practice" of wage abuse allegation, but does not support it by a preponderance of evidence. The Court rejects Defendant's assumption and, as such, does not find that Defendant has adequately supported the alleged amount in controversy. *See Garibay v. Archstone Communities LLC*, 539 Fed.Appx. 763, 764 (9th Cir. 2013) (rejecting defendant's assumption that each employee was entitled to maximum statutory penalty because the assumption was not supported by any evidence); *see also Landeros*, 2021 WL 1134681, at *3 (holding that engaging in a "pattern and practice" of behavior does not necessarily mean *always* doing something).

### B. Wage Statement Claim

Defendant again relies on Carr's declaration to calculate the wage statement claim. Opp'n. at 4. Carr again assumes a 100% violation rate by including each putative class member who was within the one-year statute of limitations for this claim. *Id.* For his calculations, Carr estimated a violation rate of only two inaccurate wage statements per person, totaling $150 in penalties per person. *Id.* at 5. Carr multiplied this $150 ($50 for the initial violation and $100 for the subsequent violation) by the total number of non-exempt employees, and combined those totals to arrive at the amount in controversy of $353,400. *Id.*

Plaintiff argues that Defendant's assumed 100% violation rate is also unreasonable for the wage statement claim, because there is no evidence to support the assumption. Reply at 11. Plaintiff contends that this assumption of such an extreme violation rate can only be supported by allegations in the pleadings. *Id.* (referring to *Brancaccio*, WL 1686253, at *4). Plaintiff further asserts that allegations of "pattern and practice" do not

equate to Defendant *always* making these violations. *Id.* Given that Plaintiff's FAC only refers to this "pattern and practice" and does not allege that all putative class members suffered wage statement violations every pay period, Plaintiff claims that Defendant's assumption is unreasonable.

The Court agrees with Plaintiff that Defendant's assumption of a 100% violation rate for the wage statement claim is unreasonable. Defendant makes this extreme assumption not through evidence, but rather by Plaintiff's allegation of Defendant engaging in a "pattern and practice" of wage statement violations. *See Garibay*, 539 Fed.Appx. at 764 (holding similar calculation assumed that "every single member of the class would be entitled to recover penalties for every single pay period" was not supported by evidence and could not be used to calculate the amount in controversy). Since Defendant has not provided sufficient evidence to support its assumption of a 100% violation rate, the Court rejects Defendant's amount in controversy calculation.

### C. Rest Break Claim and Meal Break Claim

Defendant relies on Carr's declaration to calculate the rest break claim and meal break claim. Opp'n. at 5. Because of the similarities between the two allegations, Carr calculates these two claims using the same methodology and arrives at the same amount in controversy for each. *Id.* at 6. Carr's methodology involves (1) determining the total number of months worked by putative class members during the statutory period, and (2) multiplying that number by the lowest possible hourly minimum wage during the relevant period to arrive at the lowest possible penalty for a single missed rest break for each month or each week worked by a class member. *Id.* at 5. The former calculation of a single missed rest break per month constitutes the "low-end" amount in controversy of $940,852.50 for each claim, while the latter calculation of a single missed rest break per week reflects the "high-end" amount in controversy of $4,032,241.50 for each claim (a total range of $1,881,705 to $8,064,483 for both claims). *Id.* at 6.

Defendant bases these calculations on Plaintiff's FAC. Defendant argues that Plaintiff's FAC alleges a "pattern and practice" of failing to pay Plaintiff and the putative class for "missed meal periods and rest breaks," and that Defendant failed to provide Plaintiff and the putative class "all required rest and meal periods." *Id.* at 20. Defendant argues that since Plaintiff's allegations do not include qualifying words, a "100% violation rate is reasonable." *Id.*; *see also Soratorio v. Tesoro Ref. and Mktg. Co., LLC*, 2017 WL 1520416, at *3 (C.D. Cal. Apr. 26, 2017) (approving 100% violation rate given allegations of a "common practice" of failing to provide breaks).

Plaintiff argues that Defendant's assumption of a 100% violation rate of all putative class members is unsupported by evidence. Reply at 12. Plaintiff contends that Defendant failed to "provide a single timecard, paystub, wage statement, work schedule, or other document to support the propriety of its meal and rest break violation rates," instead misconstruing the FAC. *Id.* Plaintiff asserts that Defendant had misconstrued its allegation that Defendant failed to provide "'*all* required rest and meal periods'" to "engage in 100% violation rate applications." *Id.* However, a "plain reading of this language" reveals that a 100% violation rate application is not appropriate here. *Id.* This reading does not suggest that the Defendant "always" or "at all times" failed to provide these rest and meal periods; rather, the allegation reflects only a "pattern and practice" of such failures. *Id.*

Additionally, Plaintiff argues that Defendant interprets the "pattern and practice" language in the FAC to allow it to "draw numbers from thin air." *Id.*; *see also Ibarra*, 775 F.3d at 1199 (holding that "a damages assessment may require a chain of reasoning that includes assumptions. When that is so, those assumptions cannot be pulled from thin air but need some reasonable ground underlying them."). As such, because the Defendant does not provide evidence to support its assumption, the Plaintiff argues that the Defendant's amount in controversy is "pure speculation" and must be rejected. Reply at 13.

Plaintiff asserts, and the Court agrees, that the Defendant's amount in controversy is unsupported by evidence *See* Reply at 6. Defendant has interpreted Plaintiff's "pattern and practice" allegation to wrongly justify applying a 100% violation rate to its calculations. A "pattern and practice" of violations does not necessarily indicate that such violations *always* occur. This extreme violation rate is inappropriate, then, because Defendant does not support it with any evidence other than Plaintiff's "pattern and practice" allegation. Because this assumption is inadequately supported, Defendant's amount in controversy is speculative and must also be rejected.

### D. Attorneys' Fees

Defendant argues that a 25% benchmark for attorneys' fees is "routinely used in wage-and-hour lawsuits." With this 25% benchmark and with the total amount in controversy ranging from $7,486,968.87 to $13,669,746.87, Defendant calculates $1,871,742.22 to $3,417,436.72 for attorneys' fees. Opp'n. at 6. Plaintiff responds that this calculation is "improper" because it is based on "unsubstantiated calculations." Reply

at 13. Even if the 25% benchmark was an appropriate rate, Defendant applies it to a flawed calculation of the total amount in controversy, given that these amounts stem from an unreasonable application of a 100% violation rate. *Id.*

　　　　The Court agrees with Plaintiff and finds that this calculation of attorneys' fees is improper based on the flawed calculation of the total amount in controversy. Since there is insufficient evidence to establish the total amount in controversy, it would be erroneous to base attorneys' fee calculations on that flawed total amount in controversy. As such, the Court denies the Defendant's range of attorneys' fees award to be considered in the amount in controversy.

## IV.　　Disposition

　　　　Given that the Defendant fails to satisfy the CAFA's amount in controversy of $5 million for the reasons set forth above, the Court hereby **REMANDS** this case to the Superior Court of Orange County, California.

　　　　The Clerk shall serve this minute order on the parties.

MINUTES FORM 11　　　　　　　　　　　　　　　　　　　　Initials of Deputy Clerk: kd

CIVIL-GEN